Gurpreet Kaur, Esq.
Kaur Legal Group, PC
674 County Square Dr, Suite 305
Ventura, CA 93003
Ph. 805-300-9003; Cell 909-997-4570
Fax: 805-716-6100
E-mail: gurpreetkauresq@gmail.com
*Attorney for Petitioner*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAINESHKUMAR RAMESHBHAI PATEL<br><br>Petitioner,<br>v.<br>MARK BOWEN, Acting-Warden of the Adelanto Detention Center; DAVID J. VENTURELLA, Acting Director of Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, Attorney General of the United States<br><br>Respondents. | Civil Action No.<br><br>**VERIFIED PETITION FOR HABEAS CORPUS** |

## INTRODUCTION

1. This Petition challenges Petitioner's continued civil immigration detention following a constitutionally inadequate custody determination under 8 U.S.C. § 1226(a). Petitioner is not subject to mandatory detention. He is an admitted noncitizen detained under 8 U.S.C. § 1226(a), a statute under which detention is discretionary and release on bond is expressly authorized.

2. Petitioner was not apprehended while committing a crime, attempting to flee, violating an order of supervision, or attempting to evade immigration authorities. Rather, immigration officers conducted a targeted enforcement operation at Los Angeles International Airport after identifying

Petitioner as a purported SEVIS status violator. Officers approached Petitioner at the airport, advised him that an administrative immigration warrant had been issued, and took him into custody. DHS thereafter charged Petitioner with removability for failure to maintain nonimmigrant status under 8 U.S.C. § 1227(a)(1)(C)(i). The Government's own Form I-213 recorded that its review of law-enforcement and court records revealed “no criminal history.”

3. Petitioner's circumstances did not present the hallmarks ordinarily associated with a need for civil detention. He had been admitted to the United States in F-1 status; is married to a United States citizen; and, before his arrest, had pending with USCIS both an I-130 Petition for Alien Relative and an I-485 Application to Adjust Status filed on May 9, 2025.

4. Petitioner thereafter sought the safeguard Congress expressly made available to persons detained under § 1226(a): individualized custody review. He submitted substantial evidence bearing upon his suitability for release, including evidence concerning his United States citizen spouse, marriage, residence, financial ties, pending adjustment proceedings, and other equities.

5. Yet on September 16, 2026, the Immigration Judge denied release solely on the ground that Petitioner had failed to establish that he was not a danger to the community. The dangerousness determination arose from a single DWI arrest rather than a conviction or pattern of dangerous criminal conduct.

6. The Constitution does not permit civil immigration detention to become punitive, nor does the availability of an immigration bond hearing insulate the resulting detention from habeas review when the hearing itself fails to provide constitutionally adequate individualized consideration. The question presented here is not whether this Court would weigh Petitioner's evidence differently from the Immigration Judge. It is whether Petitioner's continuing physical confinement rests upon the individualized determination of present dangerousness that due process requires.

7. That distinction is particularly important here. Only days ago, in *Zhamagortsyan v. Warden, Adelanto ICE Processing Center*, No. 5:26-cv-04093-DTB (C.D. Cal. Sept. 24, 2026), this Court granted habeas relief where an Immigration Judge found an admitted noncitizen dangerous based upon a single pending DUI prosecution. The Court held that § 1226(e) did not foreclose review of whether the Immigration Judge applied the legally required standard and concluded that the dangerousness determination could not stand where generalized propositions concerning the dangers of drunk driving substituted for an individualized assessment of the petitioner's circumstances. The Court ordered immediate release rather than merely another bond hearing.

8. Petitioner's detention warrants the same constitutional scrutiny. The Government may pursue removal proceedings against Petitioner. What it may not do is continue depriving him of physical liberty through a custody determination that does not meaningfully determine whether this particular individual presently poses a danger requiring incarceration.

**9.** Petitioner therefore seeks a writ ordering his immediate release from immigration custody. In the alternative, Petitioner requests a prompt, constitutionally adequate individualized custody hearing addressing whether continued detention is actually necessary, together with appropriate safeguards against arbitrary re-detention.

## JURISDICTION

10. This action arises under the Constitution of the United States and the INA, 8 U.S.C. § 1101 *et seq*.

11. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

12. This Court has authority under 28 U.S.C. § 2241 to grant the writ, order Petitioner’s release

from unlawful custody, and grant such ancillary relief as is necessary to effectuate its habeas jurisdiction.

## VENUE

13. Venue is proper because Petitioner is detained in Adelanto Detention Facility, which is within the jurisdiction of this District. Venue is also proper in this District because Respondents are officers, employees, or agencies of the United States. *See* 28 U.S.C. § 1391(e).

## PARTIES

14. Respondent Mark Bowen is sued in his official capacity as Acting-Warden of the Adelanto Detention Facility. Respondent Bowen is the physical custodian of Petitioner.

15. Respondent David Venturella is sued in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement. Respondent Venturella is a legal custodian of Petitioner and has authority to release him.

16. Respondent Mullin is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security. In this capacity, Respondent Mullin is responsible for the implementation and enforcement of the INA, and oversees ICE, the component agency responsible for Petitioner's detention and custody. Respondent Mullin is a legal custodian of Petitioner.

17. Respondent Todd Blanche is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice. In that capacity, he has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the BIA. Respondent Blanche is a legal custodian of Petitioner.

## STATEMENT OF FACTS

18. Petitioner Jaineshkumar Rameshbhai Patel ("Petitioner") is a native and citizen of India. He is presently detained in the custody of U.S. Immigration and Customs Enforcement ("ICE") pending removal proceedings.

19. Petitioner first entered the United States in F-1 nonimmigrant student status on December 27, 2014. Thereafter, Petitioner traveled internationally and was repeatedly inspected and admitted to the United States in F-1 status. Most recently, Petitioner was admitted to the United States in F-1 status on December 18, 2018. DHS's own records document these lawful admissions.

20. Petitioner has developed substantial family, residential, and financial ties to the United States. He is married to a United States citizen, Riya Contractor. In support of his request for release from immigration custody, Petitioner submitted evidence documenting his marriage, his spouse's United States citizenship, the couple's joint financial affairs, their tax filings, their residential lease, and other evidence demonstrating their shared life in the United States.

21. Petitioner is also pursuing lawful permanent resident status through his marriage to his United States-citizen spouse. On May 9, 2025, an I-130 Petition for Alien Relative and an I-485 Application to Register Permanent Residence or Adjust Status were filed with USCIS on Petitioner's behalf. According to DHS's own Form I-213, both applications remained pending when ICE arrested Petitioner in August 2026. Thus, before his detention, Petitioner was not an individual unknown to immigration authorities or living beyond the Government's ability to locate him. USCIS possessed pending applications identifying Petitioner and his immigration history, and government databases contained his identifying and residential information.

22. Petitioner's detention did not arise from the commission of a crime, an encounter with local law enforcement, an attempt to evade immigration authorities, or an effort to conceal his identity. Instead, ICE affirmatively selected Petitioner for a planned immigration enforcement operation at Los Angeles International Airport ("LAX").

23. DHS's own Form I-213 describes the encounter as a "targeted operation." According to that record, on August 18, 2026, ICE's Pacific Enforcement Response Center ("PERC") provided

Enforcement and Removal Operations ("ERO") in Los Angeles with a lead identifying Petitioner as a purported SEVIS status violator. Armed with Petitioner's identity and information concerning his anticipated presence at LAX, ERO officers proceeded to the airport to locate him. At approximately 8:30 a.m., officers went to Delta Airlines Terminal 2, Gate 23B, where they observed Petitioner arriving at the airline terminal.

24. ICE officers approached Petitioner, identified themselves as immigration officers, displayed their badges and credentials, and conducted what DHS describes as a "field interview." Petitioner did not attempt to flee, resist, conceal his identity, or provide false information. Instead, he answered the officers' questions, acknowledged that he was a citizen of India, and provided his Florida driver's license, through which the officers confirmed his identity.

25. According to the Form I-213, the officers then informed Petitioner that "there was an administrative arrest warrant for his apprehension" and transported him from LAX to the ICE Los Angeles Field Office for processing.

26. The records presently available to Petitioner describe the existence of an administrative arrest warrant. The Form I-213 nevertheless establishes that Petitioner's apprehension was not a spontaneous encounter requiring an immediate arrest decision. ICE had identified Petitioner in advance, received a PERC lead identifying him as a SEVIS status violator, knew where he would be located, deployed officers to LAX for the purpose of locating him, and carried out a targeted operation directed specifically at him. Nor did ICE identify Petitioner as a fugitive or individual subject to a final order of removal. The administrative basis identified by DHS for the targeted operation was Petitioner's alleged failure to maintain his nonimmigrant status. DHS subsequently charged him as removable pursuant to 8 U.S.C. § 1227(a)(1)(C)(i), based upon his alleged failure to maintain the conditions of his nonimmigrant status.

27. Following Petitioner's arrest, ICE elected to keep him physically detained pending removal proceedings rather than release him on conditions. DHS's Form I-213 states simply that Petitioner "will remain in ERO Los Angeles custody pending removal proceedings."

28. Significantly, the same Form I-213 reports that ICE reviewed multiple government and law-enforcement databases, including CIS, Planet, BIA, TECS, and FBI records. After that review, DHS expressly recorded under the heading "CRIMINAL HISTORY" that "[a] review of law enforcement and court records indicates no criminal history." DHS further recorded that Petitioner claimed no gang affiliation and had no criminal convictions under appeal. Nothing in the I-213 indicates that Petitioner threatened the arresting officers, resisted arrest, attempted to flee, or otherwise engaged in dangerous conduct during the LAX encounter.

29. Because Petitioner is detained pursuant to the discretionary detention authority of 8 U.S.C. § 1226(a), he sought custody redetermination before the Adelanto Immigration Court.

30. Petitioner's custody proceedings were assigned to Immigration Judge Curtis G. White.

31. In preparation for his custody hearing, Petitioner submitted extensive evidence addressing his individual circumstances and suitability for release.

32. Among other evidence, Petitioner submitted an affidavit from his United States-citizen spouse; proof of his spouse's United States citizenship; Petitioner's passport, visa, and I-94 records; his birth certificate; the couple's 2024 federal tax records and pay records; their marriage certificate; documentation concerning Petitioner's pending I-130 and I-485 applications, including evidence of joint financial accounts; their residential lease; and records concerning Petitioner's prior arrest.

33. Petitioner's evidence therefore placed before the Immigration Judge substantial information concerning his family relationships, residence, immigration history, financial ties, pending immigration relief, and the circumstances relevant to determining whether he could safely be released into

the community.

34. DHS submitted its own evidence for the September 16, 2026 custody redetermination hearing. DHS's submission consisted principally of the Form I-213 and an FBI record. The FBI record disclosed a single prior arrest in Hillsborough County, Florida, on October 16, 2025. The record identifies charges for driving under the influence and refusal to submit to testing, each identified in the record as a second-degree misdemeanor.

35. The records submitted by DHS do not establish a pattern of repeated arrests or convictions for driving under the influence. Rather, the record presented to the Immigration Judge concerned this single 2025 incident.

36. Notably, DHS's Form I-213 states that its review of law-enforcement and court records revealed ‘no criminal history,’ while the FBI record DHS later submitted for the custody proceeding reflects the single October 2025 Florida arrest.

37. Petitioner does not minimize the seriousness of an allegation of driving under the influence. But the custody question before the Immigration Judge concerned whether this Petitioner, based upon his complete and individualized circumstances, posed a present danger to the community requiring continued physical detention.

38. On September 16, 2026, Immigration Judge White conducted Petitioner's custody redetermination hearing.

39. At the hearing, Petitioner bore the burden applicable to his § 1226(a) custody proceeding. Petitioner does not challenge the Immigration Judge's custody determination on the ground that the Immigration Judge improperly allocated that burden.

40. Rather, Petitioner's challenge concerns whether the resulting custody determination constituted the individualized assessment of Petitioner's present dangerousness required before the

Government may continue depriving him of his physical liberty.

41. Following the hearing, the Immigration Judge denied Petitioner's request for release.

42. The written custody order identifies only dangerousness as the basis for continued detention. Specifically, the Immigration Judge ordered Petitioner's request denied because “the respondent failed to meet his burden to establish that he is not a danger to the community.”

43. The Immigration Judge did not identify flight risk as an independent basis for denying release in the written order.

44. Nor does the written order explain how Petitioner's single DUI arrest established that Petitioner presently poses a danger requiring continued incarceration, how the circumstances of that isolated incident were weighed against Petitioner's individualized evidence, or why conditions short of detention could not address any legitimate concern presented by that incident. Instead, the written order consists of the conclusion that Petitioner failed to establish that he is not a danger to the community.

45. The Immigration Judge further stated that a “more fulsome memorandum” explaining the custody determination would be prepared if Petitioner appealed the decision to the Board of Immigration Appeals. The order provided an appeal deadline of October 16, 2026.

46. The absence of an individualized explanation is particularly significant because the Immigration Judge expressly acknowledged that the existing order was not a complete statement of his reasoning, stating that a “more fulsome memorandum” would be prepared only if Petitioner appealed. Thus, the operative custody decision presently authorizing Petitioner's continued physical confinement supplies no explanation from which Petitioner—or this Court—can determine how the Immigration Judge applied the dangerousness standard to Petitioner's individual circumstances.

47. Petitioner consequently remains deprived of his physical liberty as a civil immigration detainee.

48. His confinement began with a planned ICE operation directed at a known individual whom the Government had identified in advance as a civil SEVIS status violator. He was located precisely where ICE expected him to be, cooperated with the officers who approached him, provided identification, and was arrested without any allegation that he attempted to flee, resist, obstruct, or conceal himself.

49. Petitioner was not arrested because of the 2025 DUI incident. DHS's records state that he was arrested pursuant to the targeted LAX enforcement operation “for a SEVIS-related status violation.”

50. After his arrest, Petitioner sought the individualized custody review afforded to persons detained under § 1226(a) and submitted extensive evidence addressing his particular circumstances and suitability for release.

51. Nevertheless, the custody proceeding resulted in continued detention based solely on dangerousness, with the written order providing no individualized explanation connecting Petitioner's isolated DUI arrest to a present need for physical incarceration and no explanation why release subject to appropriate conditions would be insufficient.

52. Petitioner does not ask this Court to review the merits of his removal proceedings or to substitute its judgment for the Immigration Judge on a discretionary question of bond. He challenges the legality of the seizure and detention that deprived him of his liberty and the constitutional adequacy of the process upon which his continued detention now rests.

53. Petitioner therefore seeks habeas relief from his present unlawful detention, with immediate release as the primary remedy and, in the alternative, a constitutionally adequate individualized custody determination.

## STATUTORY FRAMEWORK AND LEGAL ARGUMENT

54. This Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner is “in custody in violation of the Constitution or laws or treaties of the United States.” 28 U.S.C. § 2241(c)(3). Habeas

corpus remains the traditional mechanism for challenging the legality of physical confinement and obtaining release from unlawful executive detention.

55. Petitioner does not challenge the merits of the charge of removability against him, seek review of a final removal order, or ask this Court to terminate his removal proceedings. His claims concern a different and antecedent question: whether the Government may lawfully deprive him of his physical liberty while those proceedings remain pending.

56. Nor does 8 U.S.C. § 1226(e) foreclose review. Section 1226(e) prohibits judicial review of the Attorney General's discretionary judgment regarding the application of § 1226 but does not eliminate habeas review of constitutional claims or questions concerning the legal standards governing detention.

57. Nor does 8 U.S.C. § 1252(g) deprive this Court of jurisdiction. Section 1252(g) applies narrowly to claims arising from the Government's decision or action to "commence proceedings, adjudicate cases, or execute removal orders." Petitioner challenges none of those actions. He challenges his present physical detention and the constitutional adequacy of the custody determination sustaining it. See *Zhamagortsyan*, No. 5:26-cv-04093-DTB (rejecting § 1252(g) jurisdictional challenge to materially similar § 1226(a) habeas petition).

58. The Ninth Circuit has specifically held that a dangerousness determination underlying immigration detention presents a reviewable mixed question of law and fact rather than an insulated exercise of unreviewable discretion. *Martinez v. Clark*, 124 F.4th 775, 779–82 (9th Cir. 2024). The court emphasized the fundamental liberty interest implicated by physical detention and recognized judicial review where the challenge concerns whether the legally required standard governing detention was satisfied.

59. The distinction is dispositive here. Petitioner does not ask this Court to reweigh the evidence or substitute its judgment for that of the Immigration Judge. Rather, Petitioner asks this Court to

determine the reviewable legal question recognized in *Martinez*: whether the Immigration Judge correctly applied the governing dangerousness standard to Petitioner's individualized circumstances. See *Martinez v. Clark*, 124 F.4th 775, 783–85 (9th Cir. 2024)**.**

60. Courts in this District have repeatedly entertained materially similar challenges to immigration detention. Most recently, in *Zhamagortsyan v. Warden, Adelanto ICE Processing Center*, No. 5:26-cv-04093-DTB (C.D. Cal. Sept. 24, 2026), the court reviewed a § 1226(a) dangerousness determination based upon a single DUI arrest, concluded that the custody proceedings were constitutionally inadequate, granted the § 2241 petition, and ordered the petitioner's immediate release.

61. Similarly, in *Santiago Morales v. Mullin*, No. 5:26-cv-04576-CTS (C.D. Cal. Sept. 11, 2026), the petitioner challenged both the manner of his immigration arrest and the constitutionality of the custody determination that followed it. The court exercised habeas jurisdiction and ultimately ordered his immediate release based upon the inadequacy of the individualized custody determination.

62. This Court therefore possesses jurisdiction to determine whether Petitioner's present confinement violates federal law or the Fifth Amendment and, if so, to order his release.

63. Petitioner's detention began not through an incidental encounter with immigration officers, a criminal arrest, an attempt to evade immigration authorities, or the execution of a removal order. ICE affirmatively selected Petitioner for apprehension based upon an alleged civil SEVIS status violation and conducted a targeted operation at LAX for the purpose of taking him into custody.

64. The Government knew Petitioner's identity before approaching him. PERC supplied the lead. ICE knew where it expected to find him. Officers deployed to Delta Airlines Terminal 2, Gate 23B, observed Petitioner, approached him, questioned him, confirmed his identity through his Florida driver's license, and then took him into custody. These circumstances matter because immigration officers' authority to arrest and detain noncitizens is derived from and constrained by statute, regulation, and the

Constitution. Civil immigration enforcement does not confer unlimited authority to seize persons merely because the Government believes they may be removable.

65. Under 8 U.S.C. § 1226(a), the Attorney General may arrest and detain a noncitizen "on a warrant issued by the Attorney General" pending a decision on whether that individual is to be removed from the United States. Separately, Congress authorized warrantless immigration arrests under 8 U.S.C. § 1357(a)(2), but only where the statutory requirements for such an arrest are satisfied.

66. Here, the Government's I-213 states that officers informed Petitioner that "there was an administrative arrest warrant for his apprehension." The records presently available to Petitioner, however, establish at minimum that this was a preplanned operation in which ICE possessed Petitioner's identity, immigration information, and expected location before officers approached him.

67. No administrative arrest warrant has been provided to Petitioner in the records presently available to him. Petitioner therefore cannot presently determine the warrant's date of issuance, the official who issued or authorized it, the statutory authority under which it was issued, or whether it complied with the statutory and regulatory requirements governing Petitioner's arrest. Petitioner does not allege on the present record that no administrative warrant existed and preserves the issue pending Respondents' production of the warrant and the record establishing the legal authority for his arrest.

68. This is not a challenge to DHS's prosecutorial decision to commence removal proceedings. Petitioner does not seek dismissal of those proceedings. He challenges the distinct executive act through which the Government deprived him of physical liberty.

69. That distinction has recently been recognized in this District. In *Valtierra Moreno v. Mullin*, No. 5:26-cv-04291-MAR (C.D. Cal. Sept. 22, 2026), the court entertained a habeas challenge involving the legality of an immigration arrest and ultimately ordered immediate release, together with protection against re-detention absent advance notice and a pre-deprivation hearing.

70. Likewise, *Santiago Morales* involved claims challenging both an immigration seizure and the constitutionality of the subsequent custody determination. The court recognized that a challenge to physical detention pending removal proceedings is distinct from a challenge to the commencement or adjudication of the underlying removal case.

71. The legality of Petitioner's initial seizure therefore forms part of the constitutional circumstances surrounding his present confinement.

72. Even assuming Petitioner's initial arrest was authorized, the Constitution independently constrains his continued detention**.**

73. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

74. Civil immigration detention is regulatory, not punitive. Its legitimacy therefore depends upon a permissible governmental purpose and constitutionally adequate procedures establishing the need to restrain the particular individual's liberty.

75. Petitioner does not contend that every person detained under § 1226(a) is constitutionally entitled to have DHS bear the burden at the initial statutory bond hearing. Nor does he contend that the Immigration Judge improperly allocated the burden in his proceeding.

76. Petitioner's claim is narrower: having provided an individualized custody proceeding as the mechanism for determining whether Petitioner's continued physical confinement was warranted, the Government could not constitutionally continue that detention based upon a dangerousness determination that was not itself meaningfully individualized.

77. The Ninth Circuit has recognized the constitutional significance of precisely this determination. Preventive detention based upon dangerousness implicates the core liberty protected by the

Fifth Amendment, and dangerousness cannot operate as an incantation that places continued physical confinement beyond judicial scrutiny. See *Martinez*, 124 F.4th at 779–82. That principle has particular force here.

78. Petitioner submitted extensive individualized evidence to the Immigration Judge. The record included evidence of his marriage to a United States citizen, his spouse's citizenship, the couple's tax records and financial ties, their marriage certificate, their residential lease, Petitioner's immigration records, and documentation establishing his pending I-130 petition and I-485 adjustment application.

79. Against that individualized record stood a single Florida arrest from October 16, 2025, involving allegations of driving under the influence and refusal to submit to testing.

80. There was no record of multiple DUI incidents. There was no demonstrated pattern of repeated dangerous conduct. And DHS's own I-213—prepared after review of CIS, Planet, BIA, TECS, FBI, immigration-file, court, and law-enforcement records—affirmatively reported: "A review of law enforcement and court records indicates no criminal history."

81. Nevertheless, on September 16, 2026, the Immigration Judge denied Petitioner's request for release solely because Petitioner had failed to establish that he was not a danger to the community.

82. The written decision does not find Petitioner to be a flight risk.

83. Nor does it identify a pattern of criminal behavior, repeated alcohol-related offenses, violent conduct, gang involvement, resistance to law enforcement, or dangerous conduct occurring during Petitioner's immigration arrest.

**84.** Most significantly, the written order contains no individualized explanation of why this single arrest demonstrates that Petitioner presently poses such a danger to the community that physical incarceration remains necessary.

85. Nor does the order explain why Petitioner's extensive contrary evidence was insufficient,

whether the Immigration Judge considered the particular circumstances surrounding the isolated arrest, or whether any conditions short of incarceration could address whatever risk the Immigration Judge believed remained.

86. Instead, the order supplies only the ultimate conclusion: Petitioner "failed to meet his burden to establish that he is not a danger to the community." EVIDENCE 1

87. The constitutional defect presented here closely parallels the defect the Central District of California addressed only days ago in *Zhamagortsyan*.

88. The petitioner in *Zhamagortsyan*, like Petitioner here, was detained under § 1226(a) and received an immigration bond hearing. The Immigration Judge denied release based upon dangerousness arising from a single DUI incident. The district court did not treat the existence of a formal bond hearing as ending the constitutional inquiry. Instead, it examined whether the dangerousness determination actually rested upon a constitutionally adequate individualized assessment.

89. The *Zhamagortsyan* court emphasized that the record concerned a first-time DUI incident and examined the actual circumstances of that event rather than permitting generalized propositions concerning drunk driving to substitute for an individualized dangerousness determination. The court concluded that the petitioner's bond proceeding was constitutionally inadequate and that his continued detention violated due process.

90. The similarities here are substantial. Petitioner's custody determination likewise rests on an isolated DUI arrest rather than a pattern of repeated dangerous conduct. He likewise presented substantial individualized evidence, including a United States-citizen spouse, a fixed residence, and pending family-based immigration relief.

91. *Zhamagortsyan* does not stand for the proposition that a DUI can never bear upon dangerousness. Nor does Petitioner ask this Court to announce such a rule.

**92.** Rather, the relevant principle is that the seriousness of drunk driving as a general matter cannot substitute for determining whether the actual facts concerning the particular detainee demonstrate a present danger requiring incarceration.

93. That is the constitutional inquiry missing from Petitioner's written custody determination.

94. *Santiago Morales* reinforces the same individualized principle in a different custody context. There, the court reviewed an Immigration Judge's determination under § 1226(a) and concluded that continued detention could not rest upon generalized concerns untethered to the petitioner's actual circumstances. The court ordered the petitioner released within twenty-four hours.

**95.** The same constitutional principle should control here: civil detention must be justified by the circumstances of the person detained, not by a categorical inference drawn from a label attached to one event.

96. Petitioner's custody order states that he may appeal the Immigration Judge's decision to the Board of Immigration Appeals by October 16, 2026 and that the Immigration Judge will prepare a more fulsome memorandum if such an appeal is filed.

97. Section 2241 itself contains no statutory exhaustion requirement applicable to Petitioner's challenge. Any exhaustion requirement applicable here is prudential rather than jurisdictional.

98. Exhaustion therefore does not require dismissal where resort to the administrative process would be futile, would cause irreparable injury through continued unlawful confinement, or where the claim presented is constitutional in nature and falls within the institutional competence of the federal courts.

99. *Santiago Morales* recently addressed this precise issue in a § 1226(a) habeas challenge in this District. The court concluded that the petitioner was not required to await BIA review before pursuing his constitutional claims because delaying judicial review would merely prolong the challenged

deprivation of liberty and the petition raised constitutional due-process concerns appropriate for federal judicial resolution.

100. The same considerations apply here. Every additional day required to pursue administrative review is another day of the physical confinement Petitioner alleges is unconstitutional.

101. Moreover, Petitioner's claim is not merely that the Immigration Judge reached the wrong discretionary result. It is that his continued detention rests upon a constitutionally inadequate individualized determination. That claim falls squarely within the traditional competence of an Article III court exercising habeas jurisdiction.

102. Accordingly, Petitioner need not remain incarcerated while awaiting completion of administrative review before seeking relief under § 2241.

103. Where detention violates the Constitution, the traditional function of habeas corpus is to terminate unlawful custody.

104. Petitioner therefore seeks immediate release as his primary remedy, rather than merely an order requiring the Government to conduct another custody hearing.

105. That remedy is particularly appropriate because Petitioner has already invoked the § 1226(a) custody process and presented the Immigration Judge with extensive individualized evidence. The defect is not that Petitioner has never been afforded access to a custody proceeding. It is that the proceeding he received failed to provide a constitutionally adequate individualized basis for continuing to incarcerate him.

106. Ordering yet another hearing would leave Petitioner detained while the Government attempts to cure, after the fact, the constitutional deficiency underlying his existing confinement.

107. Recent decisions from this District demonstrate that immediate release is an available and appropriate remedy in these circumstances.

108. In *Zhamagortsyan*, after determining that the § 1226(a) bond proceeding was constitutionally inadequate, the court did not remand the petitioner for another immigration bond hearing. It issued a writ requiring his immediate release from custody**.**

109. The court further prohibited ICE from re-detaining the petitioner without notice and a pre-detention hearing before a neutral decisionmaker.

110. Similarly, *Santiago Morales* ordered the petitioner released within twenty-four hours after concluding that his continued detention rested upon a constitutionally inadequate custody determination.

111. And in *Valtierra Moreno*, the court ordered immediate release and prohibited re-detention under § 1226 without at least seven days' notice and a pre-deprivation bond hearing at which the Government would bear the burden of demonstrating danger or flight risk by clear and convincing evidence.

112. These decisions reflect the fundamental nature of the liberty interest at stake. Where the existing basis for physical confinement cannot constitutionally sustain continued detention, habeas relief need not consist merely of another opportunity for the Government to justify the same deprivation.

113. Petitioner therefore respectfully requests that this Court issue a writ directing Respondents to immediately release him from immigration custody**,** subject to reasonable noncustodial conditions if necessary, and prohibit his re-detention based upon the same circumstances absent advance notice and constitutionally adequate pre-deprivation process.

114. Only in the alternative**,** if the Court declines to order immediate release, Petitioner requests an order requiring Respondents to provide a prompt, constitutionally adequate individualized custody hearing before a neutral adjudicator at which the adjudicator must consider Petitioner's actual circumstances, determine whether Petitioner presently poses a danger to the community, and determine whether any identified risk can reasonably be addressed through conditions short of physical detention.

## CLAIMS FOR RELIEF

## COUNT ONE

### Violation of Procedural Due Process Under the Fifth Amendment — Constitutionally Inadequate Individualized Custody Determination

115. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

116. The Fifth Amendment prohibits the Federal Government from depriving any person of liberty without due process of law. U.S. CONST. amend. V.

117. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

118. Because physical confinement implicates this fundamental liberty interest, the process employed to determine whether continued civil immigration detention is necessary must provide Petitioner a meaningful opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

119. Petitioner is detained pursuant to 8 U.S.C. § 1226(a), which authorizes discretionary rather than mandatory detention and permits release on bond or conditional parole.

120. Petitioner received a custody redetermination hearing before the Adelanto Immigration Court on September 16, 2026. Petitioner does not contend that the Immigration Judge improperly placed upon him the burden applicable to his § 1226(a) custody proceeding.

121. The existence of a formal hearing, however, does not by itself satisfy procedural due process. The hearing must provide a meaningful and individualized determination of whether the asserted regulatory justification for continued physical confinement exists as to the particular detainee.

122. Here, the sole basis identified by the Immigration Judge for continuing Petitioner's detention was dangerousness. The Immigration Judge did not find Petitioner to be a flight risk.

123. Petitioner therefore possessed a substantial liberty interest in a meaningful individualized determination of whether his actual circumstances established that he presently posed a danger to the community sufficient to require continued physical detention.

124. Petitioner presented substantial individualized evidence bearing upon that determination, including his marriage to a United States citizen; his spouse's United States citizenship; the couple's shared residence; their tax and financial records; Petitioner's immigration history; and his pending I-130 Petition for Alien Relative and I-485 Application to Register Permanent Residence or Adjust Status.

125. The dangerousness issue arose from a single October 2025 arrest in Florida involving allegations of driving under the influence and refusal to submit to testing.

126. The record did not establish multiple DUI incidents, a pattern of alcohol-related offenses, violent conduct, gang activity, or a history of repeated criminal behavior.

127. Indeed, DHS's own Form I-213, prepared following review of government, court, and law-enforcement databases, stated that "[a] review of law enforcement and court records indicates no criminal history."

128. Petitioner's conduct during his immigration arrest likewise provided no evidence of dangerousness. When ICE officers approached him at LAX, Petitioner cooperated, answered their questions, produced identification, and permitted the officers to confirm his identity. There is no allegation that he fled, resisted, threatened anyone, or otherwise behaved dangerously.

129. Nevertheless, the Immigration Judge denied Petitioner's request for release solely because "the respondent failed to meet his burden to establish that he is not a danger to the community."

130. The written decision provides no individualized explanation connecting Petitioner's single DUI arrest to a finding that he presently poses a danger requiring continued physical confinement.

131. The decision does not explain the significance attributed to the particular circumstances of the incident, address the absence of a demonstrated pattern of similar conduct, explain how Petitioner's substantial contrary evidence was evaluated, or identify other conduct establishing that Petitioner presently poses a danger to the community.

132. Nor does the written decision reflect meaningful consideration of whether any legitimate concern arising from the isolated DUI incident could be adequately addressed through reasonable conditions short of incarceration.

133. Such alternatives are directly relevant to the necessity of civil detention. Where reasonable conditions can adequately address an identified risk, continued physical incarceration cannot be justified merely by identifying the existence of that risk without meaningfully considering whether detention is actually necessary.

134. The constitutional inadequacy is therefore procedural. Petitioner does not ask this Court simply to disagree with the Immigration Judge's weighing of evidence or substitute its preferred discretionary custody determination.

135. Rather, Petitioner challenges whether the procedure used to deprive him of continued physical liberty provided the meaningful individualized assessment required by the Fifth Amendment—namely, whether his particular circumstances demonstrate present dangerousness and whether that danger, if any, necessitates physical detention rather than reasonable conditions of release.

136. The distinction is recognized by the Ninth Circuit. In *Martinez v. Clark*, 124 F.4th 775 (9th Cir. 2024), the court held that application of the dangerousness standard to a particular set of facts

presents a reviewable mixed question of law and fact and is not insulated from judicial review merely because the determination arose in the immigration bond context.

137. Recent decisions of this District confirm that an Immigration Judge's failure to conduct the constitutionally required individualized inquiry renders a § 1226(a) custody proceeding procedurally inadequate.

138. In *Zhamagortsyan v. Warden, Adelanto ICE Processing Center*, No. 5:26-cv-04093-DTB (C.D. Cal. Sept. 24, 2026), the court granted habeas relief where an Immigration Judge's dangerousness determination arising from a DUI failed to meaningfully account for the individualized circumstances bearing upon whether the petitioner actually posed a present danger. The court held that the inadequate bond proceeding violated the petitioner's Fifth Amendment right to due process and ordered his immediate release.

139. Likewise, in *Santiago Morales v. Mullin*, No. 5:26-cv-04576-CTS (C.D. Cal. Sept. 11, 2026), the court found the § 1226(a) custody determination constitutionally deficient where the Immigration Judge failed to meaningfully analyze the petitioner's individualized circumstances and alternatives to detention.

140. Petitioner's September 16, 2026 custody proceeding suffers from the same fundamental procedural defect. The ultimate conclusion that Petitioner "failed to meet his burden" does not itself demonstrate that Petitioner's evidence received the meaningful individualized consideration required before the Government may continue depriving him of physical liberty.

141. Accordingly, Petitioner's continued detention pursuant to that constitutionally inadequate custody determination violates the procedural protections of the Due Process Clause of the Fifth Amendment.

142. Petitioner is entitled to habeas relief under 28 U.S.C. § 2241, including immediate release from custody.

**PRAYER FOR RELIEF**

Wherefore, Petitioner requests this Court to grant the following:

1. Assume jurisdiction over this Petition pursuant to 28 U.S.C. § 2241;

2. Issue a writ of habeas corpus under 28 U.S.C. § 2241;

3. Declare that Petitioner's continued detention, following a constitutionally inadequate individualized custody determination, violates the Due Process Clause of the Fifth Amendment;

4. Order Respondents to immediately release Petitioner from immigration custody, subject to reasonable noncustodial conditions of supervision, if any, that the Court determines appropriate;

5. Order Respondents to return to Petitioner any personal property and documents confiscated from him in connection with his arrest and detention;

6. Enjoin Respondents, their officers, agents, employees, attorneys, and persons acting in concert or participation with them from re-detaining Petitioner based upon the same circumstances without individualized notice and constitutionally adequate pre-deprivation process before a neutral decisionmaker;

7. In the alternative only, if the Court declines to order Petitioner's immediate release, order Respondents to provide Petitioner with a prompt, constitutionally adequate individualized custody hearing before a neutral adjudicator at which:

(1) the adjudicator must determine whether Petitioner presently poses a danger to the community based upon Petitioner's particular circumstances and the complete evidentiary record;
(2) the adjudicator must consider whether any identified risk can reasonably be mitigated through conditions short of physical detention;

(3) the adjudicator must consider Petitioner's substantial family, residential, financial, and immigration ties and all other relevant evidence bearing upon the necessity of continued detention; and

(4) the adjudicator must provide an individualized explanation sufficient to permit meaningful review of the basis for any continued deprivation of Petitioner's liberty;

8. Order Respondents to file a notice confirming compliance with the Court's release order within a time specified by the Court;

9. Award Petitioner reasonable attorneys' fees and costs to the extent authorized by law; and

10. Grant such other and further relief as this Court deems just and proper.

Respectfully,

/s/*Gurpreet Kaur*
Gurpreet Kaur, Esq.
Kaur Legal Group, PC

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Petitioner, and I submit this verification on his behalf. Because Petitioner is detained at the Adelanto Detention Facility and immediate relief is sought, counsel verifies this petition on his behalf pursuant to 28 U.S.C. § 2242. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 30th day of September, 2026.

/s/ *Gurpreet Kaur*
Gurpreet Kaur, Esq.